IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ROBERTA BAKER,** | 1:10-cv-2377 AWI SMS |
| **Plaintiff**, | |
| v. | **ORDER ON DEFENDANT'S RULE 12(b)(6) MOTION TO DISMISS** |
| **COUNTY OF MERCED, a public entity,** | |
| **Defendant.** | (Doc. No. 16) |

This is an employment discrimination claim brought by Plaintiff Roberta Baker ("Baker") against Defendant County of Merced ("the County"). Baker brings three claims under the federal Americans with Disabilities Act (42 U.S.C. § 12100 et seq.) ("ADA") and seven claims under the California Fair Employment and Housing Act. The active complaint is the First Amended Complaint ("FAC"). The County moves to dismiss the ADA claims under Rule 12(b)(6). For the reasons that follow, the Court will grant the motion to dismiss.

**ALLEGATIONS**

From the FAC, on March 30, 2006, Baker was involved in a car accident in which she sustained a neck, shoulder tear/impingement, and knee injuries. See FAC ¶ 10. On April 11, 2006, Baker received word from a co-worker that Baker's supervisor and other co-workers were saying that Baker was going to milk her injuries and that Baker was a "whiney baby" and a "sissy la la." Id. at ¶ 11. Baker was off work for one month because of the injuries she sustained in the

car accident. See id. at ¶ 12. On May 2, 2006, Baker returned to work on a part time basis. See id. at ¶ 14. Baker's supervisor demanded a medical release. See id. When Baker provided the release, the release requested reasonable accommodation for Baker to continue with physical therapy. See id. Baker's supervisor blurted out in front of co-workers that the release was for only four hour days and then berated Baker. See id. The supervisor had a history of discriminating against employees with disabilities, and the supervisor began to treat Baker differently after the accident. See id. at ¶ 15. Specifically, the supervisor stopped consulting with Baker, was rude, abrupt, condescending, and tried to intimidate and prevent Baker from continuing with physical therapy. See id. The supervisor also insisted that Baker maintain a full work load even though Baker was only cleared to work half days. See id. at ¶ 16. On June 5, 2006, Baker returned to work full time, but continued with physical therapy. See id. at ¶ 17. The supervisor continued to try and intimidate Baker from pursuing physical therapy. See id.

In July 2006, Baker was not offered re-employment to a position that she had held previously, but had given up as part of a reduction in force in 2003. See id. at ¶ 18.

In April 2007, Baker was denied a promotion despite being the number one candidate as determined by a merit review panel; the County instead chose the fifth ranked candidate. See id. at ¶ 24.

In April 2008, Baker was denied another promotion despite again being ranked number one. See id. at ¶ 26.

In May 2008, Baker had shoulder surgery related to the injury she had sustained in the March 2006 car accident. See id. at ¶ 27. Baker was out of work for three to four months to recuperate. See id.

On May 5, 2009, Baker was humiliated in front of co-workers by her new supervisor with respect to computer training. See id. at ¶ 28. The new supervisor continued to harass and berate Baker. See id. at ¶ 30. The new supervisor's conduct made Baker upset, confused, and physically sick. See id. Baker went to her doctor because her blood pressure was very high. See id. The physician ordered Baker off of work related stress, and recommended a psychologist. See id.

On May 26, 2009, Baker, her husband, and a County representative met to discuss Baker's complaints of harassment and discrimination. See id. at ¶ 31. Baker provided examples of how her supervisor singled her out and treated her differently. See id. Baker revealed that her blood pressure was over 200. See id. Baker's doctor placed her on disability leave. See id. at ¶ 32.

On April 25, 2011, Baker returned from her disability leave following an interactive process with the County. See id. at ¶ 33.

## **LEGAL FRAMEWORK**

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. Johnson v. Riverside Healthcare Sys., 534 F.3d 1116, 1121 (9th Cir. 2008); Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. Marceau v. Blackfeet Hous. Auth., 540 F.3d 916, 919 (9th Cir. 2008); Vignolo v. Miller, 120 F.3d 1075, 1077 (9th Cir. 1999). The Court must also assume that general allegations embrace the necessary, specific facts to support the claim. Smith v. Pacific Prop. and Dev. Corp., 358 F.3d 1097, 1106 (9th Cir. 2004). But, the Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1056-57 (9th Cir. 2008); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). Although they may provide the framework of a complaint, legal conclusions are not accepted as true and "[t]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949-50 (2009); see also Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003). Furthermore, Courts will not assume that plaintiffs "can prove facts which [they have] not alleged, or that the defendants have violated . . . laws in ways that have not been alleged."

Associated General Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court has recently explained:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Thus, to "avoid a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009); see Twombly, 550 U.S. at 570; see also Weber v. Department of Veterans Affairs, 521 F.3d 1061, 1065 (9th Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949.

> The plausibility standard is not akin to a 'probability requirement,' but it asks more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'
> . . .
> Determining whether a complaint states a plausible claim for relief will . . . be a context specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief.

Iqbal, 129 S.Ct. at 1949-50. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. United States Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009).

If a Rule 12(b)(6) motion to dismiss is granted, "[the] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc). In other words, leave to amend need not be granted when amendment would be futile. Gompper v. VISX, Inc., 298 F.3d 893, 898 (9th Cir. 2002).

4

**DEFENDANT'S MOTION**

*Defendant's Argument*

The County argues that Baker fails to allege what exactly her disability may be, although the FAC alleges soft tissue damage from a car accident and high blood pressure. As the Ninth Circuit recognized in *Sanders v. Arneson Prods., Inc.*, 91 F.3d 1351 (9th Cir. 1998), temporary impairments of insufficient duration do not fall under the protections of the ADA. Here, after the car accident, Baker was off work, but returned to work on a part time basis about a month later, and then returned to full time employment about two months after the accident. Baker has failed to adequately allege a disability, and thus, has failed to adequately allege any ADA claims.

*Plaintiff's Opposition*

Baker argues that stress and depression can be considered mental impairments under the ADA. The *Sanders* case is distinguishable because that plaintiff had a psychological condition that lasted only four months. In contrast, Baker sustained high blood pressure and emotional distress which caused her doctor to place her on disability leave in May 2009, and she did not return until April 2011. The reasonable inferences from the FAC are: (1) Baker had high blood pressure and emotional distress which prevented her from working for the County; (2) the duration of this disability was approximately 2 years; and (3) there is still impairment. Psychological impairment that lasts 2 years may constitute a disability under the ADA.

Further, another way to establish a disability is to show that a plaintiff is regarded as having a disability. Whether an individual is regarded as having a disability turns on the employer's perception of the employee. Baker "has alleged that she sustained injuries including high blood pressure and stress related to Defendant's work related conduct and that her disability continued for approximately two years until she was able to return to her employment and that she still has some residual effect." Opposition at 8:2-4. Baker contends that these allegations are sufficient to place the County on notice of her ADA claim.

*Legal Standard*

Under the ADA, "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or

5

discharge of employees, employee compensation, job training, and other terms conditions and privileges of employment." 42 U.S.C. § 12112(a) (2009 ed). The ADA defines the term "disability" to mean "a physical or mental impairment that substantially limits one or more major life activities of [an] individual," or "a record of such an impairment," or "being regarded as having such an impairment." 42 U.S.C. § 12102(1); Gribben v. UPS, 528 F.3d 1166, 1169 (9th Cir. 2007); Deppe v. United Airlines 217 F.3d 1262, 1265 (9th Cir. 2000). With respect to the first part of the "disability" definition, temporary, non-chronic impairments of short duration, that have minimal residual effects are insufficient to constitute disabilities. See Sanders v. Arneson Prods., 91 F.3d 1351, 1354 (9th Cir. 1996); McWilliams v. Latah Sanitation, Inc., 554 F.Supp.2d 1165, 1182 (D. Ida. 2008). After January 1, 2009, see Beceril v. Pima County Assessor's Office, 587 F.3d 1162, 1164 (9th Cir. 2009), an individual is "regarded as having such an impairment" if the individual establishes that he has been subjected to prohibited conduct because of an actual or perceived physical or mental impairment, whether or not the impairment limits or is perceived to limit a major life activity. See 42 U.S.C. § 12102(3)(A); Hohider v. UPS, 574 F.3d 169, 188 n.17 (3d Cir. 2009). However, a person will not be "regarded as having such an impairment" if he has a transitory impairment, i.e. an impairment with an actual or expected duration of six months or less. See 42 U.S.C. § 12102(3)(B); Hohider, 574 F.3d at 188 n.17.

*Discussion*

The County is correct that the FAC fails to identify exactly how Baker is disabled. The FAC suggests that the neck, shoulder, and knee injuries sustained from the car crash constitute disabilities. Other allegations indicate that Baker was on disability leave due to high blood pressure and stress. However, in her opposition, Baker focuses on her high blood pressure and stress. Because the FAC is ambiguous, the Court will construe Baker's disability as high blood pressure and stress, as described and discussed in her opposition. So construing the FAC, there are problems.

First, Baker has not sufficiently pled that her stress and high blood pressure constitute a "disability." With respect to "regarded as" disability, the employer must perceive (irrespective of the accuracy of the perception) that the individual has an actual disability under the ADA. See

Deppe v. United Airlines, 217 F.3d 1262, 1265 (9th Cir. 2000).  However, there is no allegation that the County perceived Baker's stress and high blood pressure to be a disability under the ADA.[1]

With respect to substantial limitations of major life activities, the FAC does not expressly identify what major life activities are substantially limited by her stress and high blood pressure.  The opposition indicates that these conditions prevented Baker from performing her job.  See Opposition at 6:27-28.  The Court construes this as a contention that Baker's stress and high blood pressure substantially limited her ability to perform the major life activity of "working."  Cf. 42 U.S.C. § 12102(2)(A); 29 C.F.R. § 1630.2(j)(3)(I); Thornton v. McClatchy Newspapers, Inc., 261 F.3d 789, 794-795 (9th Cir. 2001).  However, "[t]o be substantially limited in 'working,' an individual must be significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities," and the "inability to perform a single, particular job does not constitute a substantial limitation."  29 C.F.R. § 1630.2(j)(3)(i); Thornton, 261 F.3d at 794-95; Deppe, 217 F.3d at 1265.  Here, the only indication is that Baker's stress and high blood pressure prevented her from performing her single, particular job with the County.  This is insufficient to allege a substantial limitation of a major life activity.  See id.

Second, assuming that Baker's particular high blood pressure and stress do constitute a disability, either because they limit a major life activity or because the County regarded Baker as being disabled, there is no adverse action that occurred because of Baker's disability.  The FAC alleges that after Baker consulted with her doctor, Baker and her husband spoke with County officials and informed them about harassing and demeaning behavior against Baker, as well as Baker's blood pressure exceeding 200.  See FAC at ¶ 31.  Baker's doctor placed her on disability leave in May 2009, and Baker returned to employment with the County on April 25, 2011, following an "interactive process" with the County.  See id. at ¶ 32.  In other words, it appears

---

[1] An allegation that the County regarded Baker's stress and high blood pressure as precluding Baker from performing her particular job would be insufficient to support a claim that the County regarded Baker as having a substantially limiting impairment.  Walton v. U.S. Marshals Serv., 492 F.3d 998, 1009 (9th Cir. 2007).

7

that once Baker informed the County of her high blood pressure and stress, and presumably her doctor's orders, the County placed her on leave as requested, and then allowed her to return to work nearly two years later.  This does not demonstrate adverse action since it appears that the County complied with Baker's requests to take a leave of absence and to later return.  Without an adverse employment action because of a disability, there is no ADA liability.[2]  See 42 U.S.C. § 12012(a); Zivkovic v. Sourthern Cal. Edison Co., 302 F.3d 1080, 1090 (9th Cir. 2002); Sanders, 91 F.3d at 1353; cf. Dark v. Curry County, 451 F.3d 1078, 1084-85 (9th Cir. 2006).  Baker has failed to state a claim under the ADA.[3]

## CONCLUSION

The County moves to dismiss all three of Baker's ADA claims.  Although the FAC does not expressly identify Baker's disability, Baker's opposition clarifies that her high blood pressure and stress constitute disabilities.  However, the FAC does not allege that the County regarded Baker as being disabled because of blood pressure and stress, nor does the FAC specifically allege what major life activities are substantially affected by the high blood pressure and stress, nor does the FAC adequately indicate that the major life activity of "working" is substantially limited.  Further, even assuming that the FAC adequately alleges that Baker's high blood pressure and stress are disabilities under the ADA, there is no indication of any adverse employment actions.  The FAC indicates that, once Baker informed the County of her stress and high blood pressure, the County let her take disability leave and then let her return in April 2011. Because there are insufficient allegations of a disability, as well as insignificant allegations of

---

[2] Baker has listed several adverse acts by the County, but these actions all appear to have occurred prior to Baker informing the County of her high blood pressure and stress.  See FAC at ¶ 34.

[3] Even if the Court ignored the position taken in the opposition, i.e. identifying stress and high blood pressure and not discussing the neck, shoulder, and knee injuries, and construed the FAC as alleging that the neck, shoulder, and knee injuries were disabilities, the result would not change and the ADA claims would be dismissed. The allegations in the FAC indicate that Baker returned to her job on a full time basis on June 5, 2006, which is a about two months after the car accident.  See FAC at ¶¶ 10-11, 14, 17.  The FAC does not sufficiently indicate that these injuries were anything more than temporary, non-chronic conditions of short term duration.  See Sanders, 91 F.3d at 1354; McWilliams, 554 F.Supp.2d at 1182.  Also, there are no allegations in the complaint that the County regarded Baker as having an ADA disability because of the neck, shoulder, and knee injuries.  See Deppe, 217 F.3d at 1265.

adverse employment action, Baker has failed to allege ADA liability.  Dismissal is appropriate.  However, because it is not apparent that amendment would be futile, the Court will grant Baker leave to file an amended complaint.

Accordingly, IT IS HEREBY ORDERED that:

1. Defendant's Rule 12(b)(6) motion to dismiss is GRANTED;
2. Plaintiff's causes of action under the ADA are DISMISSED without prejudice to amendment;
3. Plaintiff may file an amended complaint, consistent with this order, no later than fourteen (14) days from the service of this order;
4. If Plaintiff chooses not to file an amended complaint, then Defendant shall file an answer or other appropriate pleading or motion as provided by the Federal Rules of Civil Procedures no later than twenty-one (21) days from the service of this order.

IT IS SO ORDERED.

Dated:   July 12, 2011

CHIEF UNITED STATES DISTRICT JUDGE